**Andrew A. LANG, Jr., Appellant**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANS-PORTATION.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 23, 2010.

Decided Feb. 18, 2011.

Maurice A. Nernberg, Pittsburgh, for appellant.

Andrew S. Gordon, Chief Counsel, William J. Cressler, Asst. Chief Counsel and Chester J. Karas, Jr., Sr. Asst. Counsel, Pittsburgh, for appellee.

BEFORE: LEADBETTER, President Judge, SIMPSON, Judge, and BROBSON, Judge.

OPINION BY Judge SIMPSON.

In this eminent domain case, Andrew A. Lang, Jr. (Lang) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) that sustained the Department of Transportation's (DOT) preliminary objections to Lang's petition for the appointment of a board of viewers (petition for viewers) alleging a *de facto* taking occurred prior to DOT's filing of a declaration of taking. Lang contends DOT waived its objection to his petition, and the trial court erred in holding Lang waived his *de facto* claim because he did not file preliminary objections to the declaration of taking. We affirm.

In March, 2009, DOT, in order to widen State Route 28, filed a declaration of taking condemning real property in Millvale, Allegheny County. Lang, owner of the condemned property, popularly known as the Millvale Industrial Park (the Property), did not file preliminary objections challenging any aspect of DOT's taking.

In July, 2009, Lang filed a petition to pay estimated just compensation. The same day, the trial court, through the Honorable Robert J. Colville, entered an order (First EJC order) that granted the petition and directed DOT to pay Lang $2,000,000 as estimated just compensation "without prejudice to [Lang's] claim to prove either an earlier date of possession or *de facto* taking." Reproduced Record (R.R.) at 60a. Six days later, Judge Colville entered a second order (Second EJC order) directing DOT, within 35 days, to pay Lang $2,000,000 less funds directed to the appropriate mortgagees and lienholders. The Second EJC order also provided, "All other matters including the date of possession and date of taking are preserved for later resolutions." *Id.* at 45a, 61a. DOT objected to the 35–day time limit, but not to the part of the order preserving all other issues. In August, 2009, DOT paid Lang.

In October, 2009, in a separate action, Lang filed a petition for viewers alleging that pre-condemnation activity and publicity regarding the Route 28 project constituted a *de facto* condemnation of the Property prior to the formal condemnation. DOT filed preliminary objections to Lang's petition alleging, among other things, Lang waived his right to claim a *de facto* taking by not doing so in preliminary objections to the declaration.

In April, 2010, the trial court, through the Honorable Michael A. Della Vecchia held a hearing on DOT's preliminary objections. The parties agreed to limit argument to the issue of whether Lang waived his *de facto* claim by failing to file preliminary objections to the declaration of tak-

ing. After argument, and a review of the briefs and record, Judge Della Vecchia sustained DOT's objections and dismissed Lang's petition for viewers with prejudice.

 In an opinion in support of its order, the trial court recognized the Eminent Domain Code (Current Code)[1] provides that preliminary objections are the exclusive method of challenging condemnation proceedings. *See* 26 Pa.C.S. § 306(a). Failure to do so shall constitute a waiver. 26 Pa.C.S. § 306(b). The trial court also relied on this Court's decision in *Nelis v. Redevelopment Authority of Allegheny County,* 12 Pa.Cmwlth. 338, 315 A.2d 893 (1974) (*Nelis II*). In *Nelis II*, we held the issue of whether a *de facto* taking occurred prior to the filing of a declaration of taking, if not previously raised, must be raised by preliminary objection to the declaration. Failure to do so constitutes a waiver of the right to subsequently raise the issue. *Id.* Lang appeals.[2]

### Issues

Lang states two primary issues. He contends DOT waived its objection to his *de facto* claim by not objecting to the part of the Second EJC order preserving all other matters, including the date of possession and date of taking, for later resolution. He asserts the two EJC orders established his right to prove a *de facto* taking occurred prior to the filing of the declaration. Lang also contends *Nelis II* is no longer "good law;" therefore, the trial court erred in determining his failure to file preliminary objections to DOT's decla-

ration of taking barred his claim for a *de facto* taking.

### Discussion

### Waiver; Adjudications

 Lang first argues the EJC orders in the formal condemnation proceeding, entered more than 30 days after DOT filed its declaration of taking, established his right to prove a *de facto* taking occurred prior to the declaration even though he did not file preliminary objections to the declaration. Also, he contends DOT, by not objecting to the issue preservation sentence in the Second EJC order, waived its right to file preliminary objections to his petition for viewers in his *de facto* claim.

Lang further argues the EJC orders that preserved the issues of the date of possession and date of taking constituted "previous adjudications" that guaranteed his right to prove an earlier *de facto* condemnation. He references Section 306(a)(3) of the Current Code, 26 Pa.C.S. § 306(a)(3), which provides (with emphasis added):

> Preliminary objections shall be limited to and shall be the exclusive method of challenging:
>
> (i) The power or right of the condemnor to appropriate the condemned property *unless it has been previously adjudicated.*

Lang's argument is as follows. The EJC orders authored by Judge Colville intended to preserve the issue of the date and manner of taking. Although DOT objected to the 35–day period for payment in

---

1. 26 Pa.C.S. §§ 101–1106. The Current Code became effective September 1, 2006.

2. Where a trial court has either sustained or overruled preliminary objections in an eminent domain proceeding, our review is limited to determining whether the trial court committed an error of law or abused its discre-

tion. *In re Condemnation by City of Coatesville,* 898 A.2d 1186 (Pa.Cmwlth.2006). In eminent domain cases, preliminary objections are intended to resolve factual and legal challenges to a taking before the parties proceed to determine damages. *Id.*

the Second EJC order, DOT did not object to the part of the order preserving the issue of the date and manner of taking. The Second EJC order therefore constitutes an adjudication establishing his right to prove a *de facto* condemnation prior to the formal condemnation.

As support, Lang cites Section 306(a)(2) of the Code, which provides: "The court upon cause shown may extend the time for filing preliminary objections." 26 Pa.C.S. § 306(a)(2). Lang argues the two EJC orders obviously intended to extend the time for filing preliminary objections.

 We disagree. In its Rule 1925(c) opinion, the trial court interpreted the ECJ orders in the formal condemnation proceeding as directing DOT to pay Lang $2,000,000 in estimated just compensation, without prejudice to assert a prior *de facto* taking. Trial Ct. Slip Op., 07/27/10, at 4. The EJC orders provided Lang with an opportunity to argue for a *de facto* taking, but the court found that Lang failed to raise the issue "at the proper time or in the proper cases." *Id.* The orders did not guarantee Lang success in his *de facto* claim or obviate the need for him to follow the required procedure in the appropriate legal action. *Id.* "A trial court is entitled to great deference in the interpretation of its own orders." *Commonwealth v. Lebo,* 713 A.2d 1158, 1161 (Pa.Super.1998). An appellate court's review of a trial court's actions relies heavily on the trial judge's discretion and reversal only occurs where a clear abuse of that discretion is indicated. *Id.*

Here, the EJC orders merely permitted Lang to receive payment of estimated just compensation without prejudice to assert that a *de facto* taking occurred prior to the declaration, within the formal condemnation proceeding. The EJC orders cannot be considered "previous adjudications" regarding DOT's power or right to condemn the Property for purposes of 26 Pa.C.S. § 306(a)(3)(i). Indeed, they did not even address that issue. Any reliance on that provision is unsupportable. As a result, the EJC orders did not waive the requirement that Lang file preliminary objections to the declaration.[3]

Further, contrary to Lang's assertion, the EJC orders did not extend the statutory time allotted for filing preliminary objections to the declaration. Moreover, the trial court limited Lang's right to assert a *de facto* taking occurred before the formal condemnation proceeding. Trial Ct. Slip Op., 07/27/10, at 4. Lang never filed preliminary objections to the declaration. Consequently, the trial court did not err in dismissing Lang's *de facto* claim, regardless of the EJC orders. *Nelis II.*

### *Nelis* Decisions

Lang next argues *Nelis II,* relied upon by Judge Della Vecchia, does not stand for the proposition that failure to file preliminary objections to a declaration of taking waives the right to a claim that a *de facto* taking preceded the declaration.

At this juncture, a short review of the *Nelis* decisions is helpful. In *Nelis v. Redevelopment Authority of Allegheny County,* 4 Pa.Cmwlth. 533, 287 A.2d 880 (1972) (*Nelis I*), the condemnee, Nelis,

---

**3.** The trial court noted Lang admitted having all the information necessary to file preliminary objections at the time DOT filed the declaration of taking. See Trial Ct. Slip Op., 07/27/10 at 6–7. The court further noted Lang's main motivation for pursuing a *de facto* taking was obtaining unlimited attorney fees and expenses under 26 Pa.C.S. § 709. *Id.* at 7. The trial court's findings are supported by the record. *See* Notes of Testimony (N.T.), 04/05/10, at 16–21; R.R. at 84a–89a. Throughout the litigation, Lang was represented by Maurice A. Nernberg, Esq.

owned commercial property in Pittsburgh, including a lot with a building housing a hotel, restaurant and bar. In March, 1967, a fire destroyed the building. Three months after the fire, the county redevelopment authority filed a declaration of taking for the property. A board of viewers awarded Nelis compensation for the value of the now-vacant lot only. Nelis appealed the award, arguing the authority's redevelopment plan in the area effected a *de facto* taking prior to the declaration and, thus, the award must include compensation for the destroyed structure. The trial court denied Nelis' appeal and directed a verdict in the amount of the viewers' award. In affirming, this Court held that after the filing of a declaration of taking, preliminary objections under Section 406(a) of the 1964 Eminent Domain Code (Former Code),[4] constituted the exclusive method to assert a *de facto* condemnation occurred prior to the declaration, and that Nelis waived his claim by failing to do so. *Nelis I.*

Nelis then filed a petition for viewers under Section 502(e) of the Former Code. He initially secured an appointment of viewers, which the trial court ultimately vacated. In *Nelis II,* we affirmed the trial court on the basis of our holding in *Nelis I,* again noting that after the filing of a declaration, preliminary objections under Section 406(a) of the Former Code constituted the exclusive method to assert a *de facto* condemnation occurred prior to the formal condemnation. In *Nelis II,* we reasoned (with emphasis added):

> By claiming that a de facto taking occurred, Nelis was actually asserting that the date of taking was not that as established by the declaration of taking, but had occurred previously thereto. *He could have used the preliminary objec-*

*tions to question the allegedly improper date, or any other procedural omission which would deny him just compensation for the property* (including the improvements and fixtures thereon) which were condemned. [Nelis] failed to take timely advantage of this remedy, however, and as stated by [Section 406(a) of the Former Code], *"[f]ailure to raise these matters by preliminary objections shall constitute a waiver thereof."*

*Nelis II,* 315 A.2d at 895.

Here, Lang decries our rationale in *Nelis II* as shortsighted, asserting that a challenge to a declaration's date of taking does not fall within the limited preliminary objections in Section 306(a)(3) of the Current Code, 26 Pa.C.S. § 306(a)(3), which include (with emphasis added):

> (i) *The power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated.*
>
> (ii) The sufficiency of the security.
>
> (iii) *The declaration of taking.*
>
> (iv) *Any other procedure followed by the condemnor.*

Lang further argues *Nelis II* is no longer "good law." Pursuant to Section 502(c)(1) of the Current Code (petition for appointment of viewers), 26 Pa.C.S. § 502(c)(1), a petition for viewers asserting a prior *de facto* taking occurred is no longer conditioned on whether the condemnor filed a declaration of taking.

Lang's argument is as follows. Section 502 of the Current Code differs from Section 502 of the Former Code. Section 502(e) of the Former Code, quoted in *Nelis II,* provided (with emphasis added):

> If there has been a compensable injury suffered *and no declaration of taking*

---

4. See Act of June 22, 1964, Special Sess., P.L. 84, *as amended, formerly* 26 P.S. § 1–406(a), repealed by Section 5 of the Act of May 4, 2006, P.L. 112.

*therefor has been filed,* a condemnee may file a petition for the appointment of viewers. . . .

However, Section 502(c)(1) of the Current Code, 26 Pa.C.S. § 502(c)(1), reads (with emphasis added):

> An owner of a property interest who asserts that the owner's property interest has been condemned *without the filing of a declaration* may file a petition for the appointment of viewers. . . .

In short, Lang argues Section 502(c)(1) of the Current Code permits a *de facto* claim in any case where a *de facto* taking occurs, regardless of whether the condemnor later files a declaration. Lang asserts this approach makes sense. If the property was already taken, the condemnor's declaration is a nullity, because the condemnor already owns the property. Therefore, Lang urges, there is no need to raise any of the four limited objections in 26 Pa.C.S. § 306(a)(3).

Lang further asserts applicable statute of limitations for a *de facto* taking claim is six years. *See* 42 Pa.C.S. § 5527(a)(2). However, *Nelis II* reduces the limitations period to 30 days from the date a declaration of taking is filed.

Lang also contends this Court could have disposed of Nelis' claim by applying the doctrine of judicial estoppel. By pursuing a *de jure* claim, Nelis acknowledged the condemnor took his property by formal condemnation. Here, Lang did not take such an inconsistent position.

Finally, as additional support for his position, Lang cites *Erie Municipal Airport Authority v. Agostini,* 127 Pa.Cmwlth. 360, 561 A.2d 1281 (1989), where we held in part that an airport authority cannot condemn *de jure* an easement it previously acquired by a *de facto* taking.

For these reasons, Lang argues the trial court erred in relying on *Nelis II.* He contends this Court erroneously decided the *Nelis* cases, and, in any event, they are no longer "good law."

▮▮▮ We disagree. Lang bases his appeal on the premise that DOT effected a *de facto* condemnation of the Property prior to its filing the declaration of taking. Therefore, Lang asserts he no longer owned the Property and thus lacked standing to file objections to the declaration of taking. Lang further argues none of the three remaining grounds for preliminary objections in 26 Pa.C.S. § 306(a)(3) are applicable. He does not contest DOT's condemnation power, the sufficiency of the security or whether DOT followed the proper procedure.

Initially, we note, DOT named Lang as "Condemnee" in its declaration of taking. *See* R.R. at 13a. In his petition for viewers, Lang acknowledged being the record owner of the Property on the date DOT filed its declaration. *Id.* at 5a. Clearly, as a record owner Lang had the requisite standing to file preliminary objections to the declaration.

Further, in *Nelis I,* an *en banc* decision, a majority of this Court, speaking through then-President Judge Bowman, stated that an owner's allegation that a *de facto* taking occurred prior to the filing of the condemnor's declaration "goes to the very heart of the condemnor's power or right to condemn by formal declaration proceedings." *Id.,* 287 A.2d at 883. In a concurring opinion, Judge Rogers observed that a *de facto* taking prior to a filing a declaration of taking constitutes a failure by the condemnor to comply with the required procedure for condemnation. *Id.* at 883–84. In *Nelis II,* we noted the condemnee, through preliminary objections, could challenge the date of taking in the declaration or any procedural irregularity. *See id.,* 315 A.2d at 895. In view of *Nelis I* and *Nelis II,* we reject Lang's contention that he could not

raise the issue of a prior *de facto* condemnation in preliminary objections to DOT's declaration of taking.

We further conclude the *Nelis* decisions were properly decided and retain their precedential value. This Court followed the *Nelis* decisions on several subsequent occasions. *See, e.g., In re Condemnation by Dep't of Transp. (Bernstein Appeal)*, 112 Pa.Cmwlth. 368, 535 A.2d 1210 (1988) (failure to raise issues of condemnor's power to condemn and the nature of the property interest a party possesses by preliminary objections to the declaration results in a waiver of those issues); *In re Condemnation by Dep't of Transp. (Saul Appeal)*, 98 Pa.Cmwlth. 527, 512 A.2d 79 (1986) (where property owner fails to exercise his right to assert a *de facto* taking prior to formal condemnation, he must exercise that right by preliminary objections to the declaration of taking, on penalty of waiver). We decline the invitation to unsettle a long-established rule of law.

Under the Current Code, preliminary objections are still the exclusive method of challenging the condemnor's right to take, the declaration of taking itself, and any procedural irregularities by the condemnor. 26 Pa.C.S. § 306(a). Failure to raise preliminary objections to these issues constitutes a waiver. 26 Pa.C.S. § 306(b).

Further, Section 502(c) of the Current Code is substantively identical to Section 502(e) of the Former Code. Section 502(c) relevantly provides (with emphasis added):

*(c) Condemnation where no declaration of taking has been filed.—*

(1) An owner of a property interest who asserts that the owner's property interest has been condemned *without the filing of a declaration* of taking may file a petition for appointment of viewers substantially in the form provided in subsection (a) setting forth the factual basis of the petition.

This language is substantively identical to that in Section 502(e) of the Former Code, which provided: "If there has been a compensable injury suffered *and no declaration of taking therefor has been filed*, a condemnee may file a petition for the appointment of viewers...." In fact, this language is now in the heading to current Section 502(c), which provides, "**Condemnation where no declaration of taking has been filed.**" "The headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control *but may be used to aid in the construction thereof.*" 1 Pa.C.S. § 1924 (emphasis added). The trial court did not err in finding no difference in substance between former Section 502(e) and current Section 502(c). Nothing in Section 502(c)(1) of the Current Code renders the *Nelis* decisions inapplicable here.

Further, Lang failed to raise the issue of whether *Nelis II* contradicts the statute of limitations for *de facto* claims in his statement of matters complained of on appeal. Accordingly, it is waived. Pa. R.A.P. 1925(b)(4)(vii).

Also, Lang's argument that *Nelis II* is distinguishable because the Court could have disposed of Nelis' *de facto* claim under the doctrine of judicial estoppel, because he proceeded in the *de jure* action, rings hollow. This Court did not decide *Nelis II* by invoking judicial estoppel. Rather, as discussed, we determined Nelis waived his *de facto* claim by failing to either assert it before the condemnor filed its declaration or raise it in preliminary objections to the declaration. *Nelis II* is applicable here.

Further, Lang's reliance on *Agostini* is misplaced. There, the condemnees filed a petition for viewers alleging a *de facto* condemnation nearly a year before the airport authority filed its declaration of tak-

ing. Significantly, the condemnees also filed preliminary objections to the declaration "asserting the [a]uthority could not take *de jure* what it had previously taken *de facto*." *Agostini*, 561 A.2d at 1283. The trial court agreed and sustained the objections. This Court affirmed. If anything, *Agostini* supports DOT's position that preliminary objections are the proper method to challenge the validity of a formal condemnation on the basis that a *de facto* condemnation already occurred.

For the above reasons, we affirm the trial court.

### ORDER

**AND NOW**, this 18th day of February, 2011, the order of the Court of Common Pleas of Allegheny County is **AFFIRMED.**