**In the Matter of: Condemnation of RIGHTS OF WAY AND EASEMENTS SITUATE IN THE TOWNSHIP OF MT. PLEASANT, County of Westmoreland, Commonwealth of Pennsylvania, By the Mt. Pleasant Township Municipal Authority for Sewer Purposes.**

**Name of Owners of Condemned Property: Malkan, Inc. and Raymond P. Alincic and Patricia Ann Alincic a/k/a Patricia A. Alincic, his wife.**

**Appeal of: Malkan, Inc.**

Commonwealth Court of Pennsylvania.

Argued April 16, 2012.
Decided June 6, 2012.

Anthony M. Gianantonio, Pittsburgh, for appellant.

Robert P. Lightcap, Latrobe, for appellees Raymond P. Alincic and Patricia A. Alincic.

BEFORE: McGINLEY, Judge, and BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge BROBSON.

This is an appeal from a decision of the Court of Common Pleas of Westmoreland County (trial court), sustaining Raymond and Patricia Alincics' (collectively, the Alincics) preliminary objections to Mt. Pleasant Township Municipal Authority's (Township) Declaration of Taking. For the reasons set forth below, we affirm.

This condemnation proceeding is pursuant to the Eminent Domain Code, 26 Pa. C.S. §§ 101–1106 (the Code). On June 6, 2008, the Township filed a Declaration of Taking to condemn an area of land described as a railroad right-of-way and easement, located in Mt. Pleasant, Pennsylvania. The area is identified as Westmoreland County tax map number 53–01–00–0–79 (the Property). (Reproduced Record (R.R.) at 7a, 388a.) Specifically, the Property is a temporary easement thirty (30) feet in width and a permanent easement twenty (20) feet in width and extending from a point located in Township Road 563 on the North to a point located approximately 600 feet North of the Armburst–Hecla Road (State Route 2007) on the South. (*Id.* at 9a, 21a, 388a.) The Township sought to condemn the Property in order to construct a public sanitary sewer system. (*Id.* at 8a.) The Township identified Malkan, Inc. (Malkan) as the owner of the Property based on tax records. (*Id.* at 180a.) In accordance with the Code, the Township filed a Declaration of Taking on June 6, 2008, notifying Malkan of the condemnation. (*Id.* at 4a.) Thereafter, the Alincics filed preliminary objections to the Declaration of Taking on October 15, 2010. (*Id.* at 16a.) In their preliminary objections, the Alincics claimed that, based on their ownership of the Property through adverse possession, the Declaration of Taking was defective as it failed to name the Alincics as a condemnee in violation of Section 304 of the Code[1] and Section 302 of the Code.[2] (*Id.* at

---

1. We note that Section 304 of the Code specifically provides:

  (a) County of recording.—
    (1) The condemnor, upon filing its declaration of taking, shall on the same day lodge for record a notice of the declaration in the office of the recorder of deeds of the county in which the property is located
    . . .
  (b) Notice and recording requirements.—
    (1) The notice shall specify:

  (i) The court term and number of the declaration of taking.
  (ii) The date it was filed
  (iii) A description or plan of the property condemned sufficient for identification.
  (iv) The *names of the owners of the property interests condemned, as reasonably known* to the condemnor.
(Emphasis added.)

2. This Court notes that the Alincics, in their preliminary objections, claim that the Decla-

22a, 24a.) Furthermore, the Alincics allege that the Township's failure to notify them within thirty (30) days of the taking was a violation of Section 305 of the Code.[3]

At the hearing on the preliminary objections before the trial court, Malkan's shareholder, Dale Malinzack, testified that Malkan purchased the Property in 1993 by quitclaim deed from Penn Central Railroad. (R.R. at 345a, 349a.) Mr. Malinzack asserted that when Malkan purchased the Property from Penn Central Railroad, the rails had been removed, but the ties remained in place. (*Id.* at 348a.) Since the purchase in 1993, Malkan paid all of the real estate taxes owed on the Property. (*Id.* at 345a.) Mr. Malinzack testified that he mined for carbon fuel resources near the Alincics' land. (*Id.* at 347a.) However, he asserted that he had not personally entered the Property nor was he aware of any other employee doing so. (*Id.* at 347a, 348a.)

Mr. Alincic also testified at the hearing. Mr. Alincic testified that he and his wife owned approximately sixty (60) acres of property in the vicinity of Clay Pike and Udell Road in Mt. Pleasant. (*Id.* at 188a, 189a.) The sixty acres included land for animal grazing. (*Id.*) The Alincics resided on this tract of land since 1977. (*Id.* at 193a.) Mr. Alincic testified that, in 1983, he engaged in negotiations to purchase the Property from Penn Central Railroad, similar to Malkan. (*Id.* at 199a.) Specifically, Mr. Alincic received a letter from Penn Central Railroad which contained an offer to acquire Penn Central Railroad's interest

in the Property for $15,550.00. (*Id.* at 208.) However, Mr. Alincic ultimately decided to reject Penn Central Railroad's offer to acquire an interest in the Property for the specified sum of money. (*Id.* at 209a.) Soon thereafter, in 1984, Mr. Alincic erected a fence around the entire perimeter of his land, including the Property. (*Id.* at 210a–11a.) Mr. Alincic described the fence as a twenty-six (26) gauge, four prong, barbed wire, electric fence. (*Id.* at 192a, 194a.) The fence is attached to "T" posts and trees with a steel jab pole. (*Id.*) The fence contained orange and pink ribbons for the purpose of assisting the Alincics in identifying when a part of the fence became loose or detached. (*Id.* at 194.) From 1984 to 2008, the Alincics continuously maintained the electric fence surrounding the Alincics' land, including the Property. (*Id.* at 211a.) Mr. Alincic further testified that he also installed drainage pipes on the Property in order to drain the fields. (*Id.* at 216a.) Furthermore, the Alincics maintained and patrolled the Property since the installation of the fence. (*Id.* at 217a.)

Since the installation of the fence, the Alincics were never contacted by Malkan regarding ownership of the Property. (*Id.* at 220a.) Furthermore, the Alincics had total control of the Property and never encountered any other individual or group exercising dominion or control over the Property. (*Id.* at 221a–22a.)

In the early portion of 2008, the Township's consulting engineer, Victor Regola,

---

ration of Taking was defective as it failed to comply with Section 302 of the Code. They, however, do not explain how the Declaration of Taking fails to comply with Section 302. Further, we find nothing which renders the Declaration of Taking defective pursuant to Section 302 of the Code because Section 302 does not pertain to notification of the condemnee. Regardless, the trial court appropri-

ately sustained the Alincics' preliminary objections on other grounds.

3. Section 305 of the Code requires that, "[w]ithin 30 days after the filing of the declaration of taking, the condemnor shall give written notice of the filing to the condemnee, to any mortgagee of record and to any lienholder of record." 26 Pa.C.S. § 305(a).

met with the Alincics regarding the proposed sewer system. (*Id.* at 222a.) Mr. Regola met Mr. Alincic at the Alincics' home to discuss the plan. (*Id.* at 223a.) During the meeting, the two men walked the Alincics' land, including the Property, and Mr. Alincic voiced his concerns over the proposed sewer system, such as potential damage to the fence and surrounding trees as a result of the construction. (*Id.*)

Mr. Regola echoed Mr. Alincic's testimony regarding their meetings about the project. (*Id.* at 169a.) Mr. Regola acknowledged that he saw the fence during his meetings with Mr. Alincic. (*Id.* at 157a, 167a.) Mr. Regola further recognized the drainage pipes installed on the Property, but was unaware that the pipes were installed by Mr. Alincic. (*Id.* at 178a.) Finally, regarding ownership of the Property, Mr. Regola determined Malkan to be the owner of record based on the tax office information and the deeds provided. (*Id.* at 180a.)

Throughout the hearing, Malkan and the Township argued that the trial court did not have jurisdiction to entertain the Alincics' preliminary objections. Moreover, Malkan and the Township argued that the Alincics did not have standing to object to the taking because they were not a party to the action.

The trial court sustained the Alincics' preliminary objections. In so doing, the trial court, in its opinion, references Section 202 of the Code, which defines condemnee as "[a] person that owns property subject to the exercise of power of eminent domain by the condemnor." 26 Pa.C.S. § 202. In that definition, the trial court reasoned, there is no distinction between a property owner who acquired title by a deed transfer and one who acquired title by adverse possession. In addition, the trial court relied on precedent in which courts' presupposed jurisdiction to entertain claims of adverse possession in an eminent domain proceeding. Accordingly, the trial court concluded that it had jurisdiction to determine an interest in the Property through preliminary objections. Furthermore, the trial court went on to conclude that the Alincics presented sufficient evidence to establish ownership through adverse possession. As a result, the trial court ruled that the Alincics had standing to file preliminary objections.

■ On appeal,[4] Malkan raises three issues to dispute the Alincics ownership. First, Malkan argues that a title dispute cannot be properly addressed by filing preliminary objections to an eminent domain proceeding. Instead, Malkan argues that the Alincics should have filed an action for ejectment or an action to quiet title. As a result, Malkan posits that the Alincics did not have standing to raise this issue and, further, that the trial court did not have jurisdiction to hear the matter. Second, Malkan contends that even if the Alincics are able to challenge title through preliminary objections, the Alincics have failed to meet the requirements of adverse possession. Finally, Malkan argues that

---

4. Where a trial court has either sustained or overruled preliminary objections in an eminent domain proceeding, our review is limited to determining whether the trial court committed an error of law or abused its discretion and whether the trial court's findings were supported by substantial evidence. *Lang v. Dep't of Transp.*, 13 A.3d 1043, 1045 (Pa. Cmwlth.2011) (citing *In re Condemnation by City of Coatesville*, 898 A.2d 1186 (Pa.Cmwlth. 2006), *appeal denied*, 591 Pa. 718, 919 A.2d 959 (2007)); *Beaver Falls Mun. Auth. ex rel. Penndale Water Line Extension v. Beaver Falls Mun. Auth.*, 960 A.2d 933, 940 (Pa.Cmwlth. 2008). In eminent domain cases, preliminary objections are intended to resolve factual and legal challenges to a taking before the parties proceed to determine damages. *Lang*, 13 A.3d at 1045.

the Alincics' preliminary objections were untimely.

## I. *STANDING & JURISDICTION*

■ Preliminary objections are the exclusive method for challenging a declaration of taking. *Bear Creek Twp. v. Riebel,* 37 A.3d 64, 67 (Pa.Cmwlth.2012); 26 Pa. C.S. § 102.[5] As a result, the Alincics' decision to file preliminary objections was correct as preliminary objections are the only method to challenge the Township's Declaration of Taking.

■ Further, the Code defines condemnee as "[a] person that owns property subject to the exercise of the power of eminent domain by a condemnor." 26 Pa. C.S. § 202. The Code does not define "owner." Similar to the trial court's conclusion, we find no distinction in the Code between an owner of record and an owner by adverse possession. *See Soderberg v. Weisel,* 455 Pa.Super. 158, 687 A.2d 839, 843 (1997).[6] Therefore, the Alincics have standing to challenge the condemnation based on their purported ownership.

■ With respect to jurisdiction, while Malkan claims that the Alincics should have filed an action to quiet title or an action for ejectment, no precedent requires a quiet title action or ejectment action as exclusive methods for challenging title.

Furthermore, this Court has stated that "[t]he nature of the property interest a party possesses, if any, in an eminent domain proceeding is properly raised by preliminary objections, and the failure to raise the issue by means of preliminary objections constitutes a waiver of such issues." *West Whiteland Assoc. v. Dep't of Transp.,* 690 A.2d 1266, 1269 (Pa.Cmwlth.), *appeal denied,* 550 Pa. 714, 705 A.2d 1313 (1997).

We are satisfied, therefore, that an interest in property may be properly addressed through a preliminary objection. As such, the trial court properly exercised jurisdiction over the preliminary objections.[7]

## II. *ADVERSE POSSESSION*

■ We next address whether the trial court erred in concluding that the Alincics established ownership through adverse possession. Adverse possession is an extreme doctrine which permits one to achieve ownership of another's property by operation of law. *Showalter v. Pantaleo,* 9 A.3d 233, 235 (Pa.Super.2010), *appeal denied,* 610 Pa. 600, 20 A.3d 489 (2011) (citing *Edmondson v. Dolinich,* 307 Pa.Super. 335, 453 A.2d 611, 614 (1982)). Accordingly, the grant of this extraordinary privilege should be based upon clear evidence. *Id.* One who claims title by adverse possession

---

**5.** Section 102 of the Code provides that: "[T]his title provides a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages." 26 Pa.C.S. § 102.

**6.** In *Soderberg,* our Superior Court, citing *O'Hara v. Richardson,* 46 Pa. 385, 390–91 (1863), stated that one who occupies land adversely for the statutory period gains an absolute, marketable title. 687 A.2d at 843.

**7.** Additionally, Section 304 of the Code requires a condemnor to specify in the declaration of taking, "[t]he names of the owners of the property interests condemned, *as reason-*

*ably known* to the condemnor." 26 Pa.C.S. § 304 (emphasis added). It is evident that the Township's engineer and Malkan were aware of the fence erected by Mr. Alincic. (R.R. at 167a, 350a.) In fact, the Township engineer, Mr. Regola, walked the Property several times with Mr. Alincic prior to the filing of the Declaration of Taking and even met Mr. Alincic at his home in order to gain access to the Property. Thus, the Township had notice of the Alincics' potential interest in the Property. Based on this knowledge, the Township should have served the Alincics as owners "reasonably known" to it based on the Code requirements.

must prove actual, continuous, visible, notorious, exclusive, distinct, and hostile possession of the land for twenty-one years. *Showalter*, 9 A.3d at 235.

■ We conclude that the trial court did not err in determining that the Alincics established ownership by adverse possession.[8] In so doing, we note that Appellants do not dispute the facts relating to the manner in which the Alincics used the Property, including installation of a fence and pipes. Rather, Appellants contend that such facts are legally insufficient to support a conclusion that the Alincics had adverse possession of the Property.

■ First, the Alincics proved actual possession. "In general, actual possession of land means dominion over the property." *Recreation Land Corp. v. Hartzfeld*, 947 A.2d 771, 774 (Pa.Super.2008) (quoting *Bride v. Robwood Lodge*, 713 A.2d 109, 112 (Pa.Super.1998)). Mr. Alincic testified that he and his wife have lived on the land since 1977 and erected a fence surrounding the Property in 1984. (R.R. at 193a.) The land containing their home is the Alincics' primary residence. In addition, Mr. Alincic testified that the perimeter of his land is fenced and maintained for animal grazing. (*Id.*) Based on this evidence, the Alincics exercised dominion over the Property and, accordingly, established actual possession.

■ Second, the Alincics' possession was continuous. The Alincics erected the fence around the Property in 1984 and, at all times, maintained the land, including the Property. The Alincics' possession was never interrupted. (*Id.* at 193a.) The Alincics, therefore, have established continuous possession beginning, at the latest, in 1984.

■ Third, the Alincics established visible, notorious possession. "The words 'visible and notorious possession,' as applied to the adverse holding of land by a party without color of title mean that the claim of ownership must be evidenced by conduct sufficient to place a reasonable person on notice that his or her land is being held by the claimant as his own." *Brennan v. Manchester Crossings, Inc.*, 708 A.2d 815, 818 (Pa.Super.), *appeal denied*, 556 Pa. 683, 727 A.2d 1115 (1998). As previously noted, the Property is within the area fenced by Mr. Alincic. The testimony in the record reveals that the fence surrounding the Property was visible to the Township and Malkan. (R.R. at 167a, 350a.) Moreover, Mr. Alincic installed drainage pipes on the Property to help drain wetlands on his land. (*Id.* at 178a.) At all times relevant, the Alincics had animals grazing throughout the Property and maintained the entire area which included

---

8. We note that, generally, a railroad is part of a public use and, therefore, cannot be adversely possessed. *A.D. Graham & Co. v. Pennsylvania Turnpike Comm'n*, 347 Pa. 622, 640, 33 A.2d 22, 31 (1943). However, once a railroad easement is abandoned, the right-of-way is extinguished. *Dellach v. DeNinno*, 862 A.2d 117, 118 (Pa.Super.2004), *appeal denied*, 584 Pa. 694, 882 A.2d 479 (2005). Removal of tracks has often been considered sufficient evidence of abandonment. *See Thompson v. Maryland and Pennsylvania R.R. Preservation Soc.*, 417 Pa.Super. 216, 612 A.2d 450, 454 (1992), *appeal denied*, 533 Pa. 635, 621 A.2d 581 (1993). Furthermore, abandonment is known as some affirmative act which renders use of the easement impossible, or of some *physical obstruction* in a manner that is inconsistent with further enjoyment of the easement. *Thompson*, 612 A.2d at 453. Here, not only did Penn Central Railroad remove the tracks in 1974, it engaged in negotiations with both the Alincics and Malkan to purchase the railroad right-of-way. These actions indicate an intention to abandon its easement. Accordingly, the fact that the Property was once a railroad easement does not preclude the Alincics from adversely possessing the Property.

a barn, saw mill, and various sheds. (*Id.* at 193a, 196a.) This evidence placed Malkan and the Township on notice of the Alincics' purported ownership and, therefore, establishes visible and notorious possession.

The Alincics have also established distinct and exclusive possession. To constitute distinct and exclusive possession for purposes of establishing title to real property by adverse possession, the claimant's possession need not be absolutely exclusive. *Brennan*, 708 A.2d at 818. Rather, the possession need only be a type of possession which would characterize an owner's use. *Id.* There is no evidence in the record that anyone other the Alincics exercised dominion and control over the Property. (R.R. at 221a–22a.) Furthermore, Mr. Malinzack testified that he did not personally step onto the Property to mine for carbon fuel resources and he was unsure whether any other individual from Malkan had done so. (*Id.* at 347a–348a.) In addition, the Alincics maintained the Property for their own personal use since 1984. (*Id.* at 193a, 196a.) Exclusive and distinct possession, therefore, is established.

Further, the Alincics established hostile possession. The "word 'hostile,' as an element of adverse possession does not mean 'ill will' or 'hostility,' but implies an assertion of ownership rights adverse to that of the true owner and all others." *Brennan*, 708 A.2d at 818 (citing *Schlagel v. Lombardi*, 337 Pa.Super. 83, 486 A.2d 491 (1984)). Here, Mr. Alincic's testimony supports the finding that he was exercising ownership over the Property knowing it did not belong to him. Mr. Alincic negotiated with Penn Central Railroad to purchase the Property. (R.R. at 199a.) Upon a rejection of an offer to acquire an interest in the Property from Penn Central Railroad, Mr. Alincic erected the fence to surround the land he possessed to include the Property. (*Id.* at 211a.) The Alincics, therefore, were aware that they were not the rightful owners of the Property, but, at all times, treated the Property as their own. The Alincics possession was accordingly, "hostile."

Finally, the Alincics demonstrated possession for the statutory period. The statutory period for adverse possession in Pennsylvania is twenty-one (21) years. *See Shaffer v. O'Toole*, 964 A.2d 420, 424 (Pa.Super.), *appeal denied*, 602 Pa. 679, 981 A.2d 220 (2009). Here, Mr. Alincic testified that he erected the fence around the perimeter of his property, including the Property in 1984. (R.R. at 210a–211a.) The Declaration of Taking was not filed until 2008. (R.R. at 4a.) Accordingly, the Alincics have possessed the Property for the statutory period.

Having met the elements of adverse possession, the Alincics acquired title by operation of law. As a result, the trial court did not err in ordering the Township to amend its Declaration of Taking to include the Alincics as a condemnee.

### III. *TIMELINESS OF PRELIMINARY OBJECTIONS*

Pursuant to Section 306 of the Code, the condemnee may file preliminary objections to the declaration of taking within 30 days *after being served* with notice of condemnation. Here, the Alincics were never served with notice of the condemnation and, therefore, the thirty day period did not commence. Accordingly, the Alincics' preliminary objections, filed on October 15, 2010, were, if anything, early, but certainly not late.

Because the trial court had jurisdiction over the title dispute and the Alincics established ownership by adverse possession,

the trial court did not commit legal error. As a result, the trial court's order should be affirmed.

## ORDER

AND NOW, this 6th day of June, 2012, the order of the Court of Common Pleas of Westmoreland County is hereby AFFIRMED.