In re: CONDEMNATION by the COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, of Right–of–Way for State Route 0079, Section A23 R/W, a Limited Access Highway in the Townships of Collier and Robinson

The Church of Grace and Glory

v.

Commonwealth of Pennsylvania, Department of Transportation.

Appeal of: The Church of Grace and Glory.

Commonwealth Court of Pennsylvania.

Argued April 16, 2013.

Decided Aug. 16, 2013.

William P. Bresnahan, Pittsburgh, for appellant.

Chester J. Karas, Jr., Senior Assistant Counsel, Pittsburgh, for appellee.

BEFORE: COHN JUBELIRER, Judge, BROBSON, Judge, and COLINS, Senior Judge.

OPINION BY Judge BROBSON.

Appellant The Church of Grace and Glory (Church) appeals from the July 25, 2012 order of the Court of Common Pleas of Allegheny County (trial court), which sustained Appellee/condemnor Department of Transportation's (DOT) preliminary objections to the Church's petition for appointment of a board of viewers. For the reasons set forth below, we affirm the trial court's order.

On May 1, 2006, DOT filed with the trial court a declaration of taking under what is now the former Eminent Domain Code (former Code),[1] docketed at GD–06–10196. (Reproduced Record (R.R.) at 6a–17a.) The declaration of taking sought to condemn "all right, title, and interest in and to [subsurface coal]" of a property located in the Townships of Collier and Robinson. (R.R. at 9a.) In its declaration, DOT alleged that, despite a diligent search, it was unable to identify or otherwise determine the owner(s) of the subsurface coal at the property. (R.R. at 12a.) The record indicates that DOT also filed with the trial court a declaration of taking, docketed at GD 06–010194, condemning the surface property owned by the Church at the same location as the subsurface coal. (*Id.* at 134a–42a.) On May 10, 2006, DOT published, pursuant to former Section 405(b) of the Code, 26 P.S. § 1–405(b), a notice of the taking and estimated just compensation in the *Pittsburgh Post–Gazette* and the *Pittsburgh Legal Journal.*[2] (*Id.*) The notice read in pertinent part:

In the Court of Common Pleas of Allegheny County, Pennsylvania

D.B.–Volume 12829 Page 546

In Re: Condemnation by the Commonwealth of

Pennsylvania, Department of Transportation, of the right-

of-way for State Route 0079, Section A23 in the

Township of Collier and the Township of Robinson.

No. 2006–13177 Term, 2006

---

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §§ 1–101 to 1–903, repealed by the Act of May 4, 2006, P.L. 112 (Act 34). Act 34 enacted the consolidated Eminent Domain Code at 26 Pa.C.S. §§ 101–1106. Although repealed and replaced by Act 34, the former Code governs this case be-cause, with certain exceptions not applicable here, Act 34 applies only to condemnations effected on or after its September 1, 2006, effective date. *See* Section 6(1) of Act 34.

2. On May 4, 2006, DOT posted the notice of the taking on the property. (R.R. at 23a.)

Eminent Domain Proceeding in Rem
Notice of Condemnation and Deposit of
Estimated Just Compensation

Notice is hereby given that the Commonwealth of Pennsylvania, by the Secretary of Transportation ... pursuant to the provisions of Section 2003(e) of the Administrative Code of 1929, P.L. 177, 71 P.S. [§ ] 513(e), as amended, has filed on May 1, 2006, a Declaration of Taking to the above term and number, condemning the property shown on the plans of the parcels listed on the Schedule of Property Condemned which have been recorded in the Recorder's Office of the above county at the places indicated on the said schedule. The name(s) of the owner(s) of the property interest(s) condemned is (are) also shown on the aforesaid Schedule....

The purpose of the condemnation is to acquire property for transportation purposes.

Plans showing the property condemned from the parcels listed on the Schedule of Property Condemned have been recorded in the aforesaid Recorder's Office at the places indicated on the Schedule, where they are available for inspection. The Property Interest thereby condemned is designated on the Declaration of Taking heretofore filed. The Commonwealth of Pennsylvania is not required to post security, inasmuch as it has the power of taxation.

Because the Identity or the whereabouts of the condemnee(s) listed below is (are) unknown or for other reasons he (they) cannot be served, this notice is hereby published in accordance with Section 405(b) of the Eminent Domain Code of 1964 (26 P.S. [§ ] 1–405(b)). Claim No. 0200458000; Parcel No. 37; Name Unknown Owner; Address

. . . .

Furthermore Notice is Given That the Commonwealth of Pennsylvania, Department of Transportation, pursuant to Section 522 of the Eminent Domain Code of 1964 (26 P.S. [§ ] 1–522), will, no less than twenty (20) day[s] subsequent to the expiration of the statutory period for the filing of preliminary objections to the Declaration of Taking, present a petition to the Court of Common Pleas of the above county to deposit into court the just compensation estimated by the Commonwealth to be due to all parties in interest for damages sustained as the result of the condemnation of the property herein involved.

... After estimated just compensation has been deposited into court, the said monies may be withdrawn by the persons entitled [thereto] only upon petition to the court.

(*Id.* at 111 a.)

On July 18, 2006, under Section 522 of the former Code, 26 P.S. § 1–522,[3] DOT petitioned the trial court to deposit estimated just compensation of $28,400 into court, because DOT sought possession of the condemned property and could not determine the owners of the subsurface coal. (*Id.* at 19a–20a.) On the same day, the trial court granted DOT's petition and ordered that the sum of $28,400 be paid into court in an interest-bearing account. (*Id.* at 22a.)

---

**3.** Section 522 of the former Code provides in pertinent part:

Upon refusal to accept payment of the damages, or of the estimated just compensation under section 407 or *if the party entitled thereto cannot be found* or if for any reason the same cannot be paid to the party entitled thereto, the court upon petition ... may direct payment thereof and cost into court....

26 P.S. § 1–522 (emphasis added).

On July 31, 2007, in connection with DOT's declaration of taking with regard to the Church's surface property, the Church served interrogatories on DOT, asking for information regarding, *inter alia*, (1) the ownership of the coal estate beneath the Church's property, (2) the quantity of coal removed, and (3) any sale of the removed coal. (*Id.* at 134a–39a.) On September 20, 2007, DOT responded to the Church's interrogatories and provided the Church with a copy of its coal ownership analysis.[4] (*Id.* at 136a–40a.)

On December 28, 2010, Champion Processing, Inc. (Champion), one of the entities identified by DOT as a *potential* owner of the coal estate, assigned to the Church

> all of Champion's right, title, and interest (*if any*) *in and to a claim or claims for damages,* which include but are not limited to estimated as well as just compensation, that Champion *may have* or has against [DOT] pursuant to the [Code], for certain coal taken by [DOT] pursuant to the Declaration of Taking filed in April 2006 by [DOT] in the [trial court] at [docket number] *GD 06–10196.*

(*Id.* at 75a (emphasis added).) The assignment further provided:

> Although the aforesaid Declaration of Taking states that the Condemnees are unknown, Champion acquired its interest in all of the Pittsburgh vein or seam of coal, including the roof and rooster coal, and all seams of coal lying above horizon of the Pittsburgh vein or seam, (*which may include all or a portion of the coal condemned by [DOT]* ) pursuant to a Deed from Consolidation Coal Com-

pany to Champion dated June 30, 1983 and recorded in the Office of Recorder of Deeds of Allegheny County. . . . The Church shall have the full right to maintain the claim or claims and to collect, sue for, settle, compromise, or reassign such claim or claims, or to tender a release in full discharge of any liability thereunder.

(*Id.* (emphasis added).)

On October 12, 2011, asserting a right to compensation for the condemned subsurface coal based upon the Champion assignment, the Church petitioned the trial court to appoint a board of viewers to determine the value of the condemned subsurface coal. (*Id.* at 27a–29a.) By order dated October 12, 2011, the trial court appointed a board of viewers. (*Id.* at 77a.)

On November 9, 2011, DOT filed preliminary objections to the Church's petition for the appointment of a board of viewers, requesting that the trial court dismiss the Church's petition with prejudice. (*Id.* at 78a–84a.) DOT alleged that "[n]o preliminary objections were filed challenging any aspect of [DOT's] Declaration of Taking." (*Id.* at 80a.) DOT also alleged various deficiencies pursuant to Section 504 of the former Code, 26 P.S. § 1–504. (*Id.* at 80a–82a.) Specifically, DOT argued that the petition for appointment was filed beyond the applicable limitation period in effect at the time of DOT's deposit into court of its estimated just compensation.[5] DOT took the position that, pursuant to Section 5526(4) of the Judicial Code, 42 Pa.C.S. § 5526(4), a petition for the appointment must be commenced within five years of the payment of estimated just compensa-

---

4. In its ownership analysis for the subsurface coal, DOT concluded that the owners were either unknown, heirs of Charles Fleck, Consolidated Coal Company, or Champion Processing, Inc. (R.R. at 25a.) It also noted that "due to the lack of any recorded instrument showing the transfer of the coal rights to Charles Fleck it would appear that either Consol or Champion *could have* a claim to the coal rights." (*Id.* (emphasis added).)

5. *See* 42 Pa.C.S. § 5526(4).

tion into the court.[6] Thus, DOT contended that a petition for appointment would had to have been filed no later than July 18, 2011, to be timely. Because the Church did not file its petition until October 12, 2011, DOT contended that the trial court lacked subject-matter jurisdiction and was without authority to appoint viewers to assess damages.

On December 20, 2011, the Church petitioned the trial court for payment, with interest, of the $28,400 in estimated just compensation. (*Id.* at 93a–97a.) On the same day, the trial court granted the Church's petition and released $31,280.16 to the Church. (*Id.* at 3a, 99a.)

Following a hearing, on July 25, 2012, the trial court sustained DOT's preliminary objection and dismissed the Church's petition for appointment. (*Id.* at 168a–69a.) The Church appealed to this Court. The trial court issued an opinion in support of its order in accordance with Pennsylvania Rule of Appellate Procedure 1925(a). (*Id.* at 170a.) In the opinion, the trial court only addressed the Church's argument that the limitations period was tolled until December 28, 2010. (*Id.* at 183a.) The trial court concluded:

> The Court respectfully disagrees with that and believes the Church had notice far in advance of December 28, 2010; that it received the estimated just compensation for the coal, and it cannot now seek to assert a further claim for compensation of the coal well beyond the applicable statute of limitations. The Church, for reasons known only to itself, *sat on its right for over six and one-half months* and cannot now be heard to complain about a lack of notice.

(*Id.* (emphasis added).)

■▬ On appeal,[7] the Church argues that the trial court erred in dismissing the petition for appointment for failure to file within the applicable statutory period when (1) DOT failed to provide an adequate statutory notice of the filings of the declaration of taking and the petition to deposit estimated just compensation to Champion or the Church, and (2) the time for filing a petition for the appointment of a board of viewers does not start until a condemnee is actually served with notice of a condemnation and thereby knows that its property has been condemned. In response, DOT contends that, regardless of the notice provided, the trial court did not err in dismissing the petition for appointment of viewers because (1) the Church lacks standing to challenge the declaration of taking, because it was not an owner at the time of the taking, and (2) the Church cannot challenge the taking because it accepted the estimated just compensation payment.[8]

---

6. DOT reasoned that the five-year limitation period contained in former Section 5526(4) of the Judicial Code was repealed by Act 34, effective on September 1, 2006. Any cause of action that the Church may have acquired for damages related to the condemnation of the coal estate arose on July 18, 2006, before the effective date of the repeal of former Section 5526(4) of the Judicial Code. The current Section 5527 of the Judicial Code, which provides for a six-year limitation period for the filing of a petition for appointment of viewers, did not become effective until September 1, 2006.

7. Our review of a trial court's ruling on preliminary objections to a petition for appointment of a board of viewers is limited to determining whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Shaner v. Perry Twp.*, 775 A.2d 887, 890 n. 2 (Pa.Cmwlth.2001).

8. In summarizing the issues before the Court for review, we observe that the Church's brief fails to comply with the Pennsylvania Rules of Appellate Procedure. Pa. R.A.P. 2111 requires that an appellant's brief include,

At the core of this matter is whether the Church's petition for the appointment of a board of viewers was timely. The Church contends that the statute of limitations period was tolled, because DOT's notice of the taking was legally insufficient for two reasons. First, DOT failed to provide a notice of the taking to Champion or the Church. Second, DOT's published notice was defective for failing to provide an adequate description of the condemned property. DOT counters that the Church's petition for the appointment of viewers is untimely, because the statute of limitations period runs from the date DOT deposited estimated just compensation into court. DOT, therefore, asks this Court to preliminarily reject the Church's arguments as an improper challenge to the taking.

Here, contrary to DOT's assertions, the Church is not challenging the legitimacy of the declaration of taking, but merely seeking an appointment for a board of viewers and responding to the statute of limitations argument that DOT raised in opposition to the Church's petition for appointment.

At the outset, we note that "[t]he statute of limitations for filing a petition for appointment of a [b]oard of [viewers begins] to run from the *payment of estimated just compensation." Wyland v. Dep't of Transp.*, 799 A.2d 954, 956 (Pa. Cmwlth.2002) (emphasis added). We further note that the statute of limitations does not run from the filing of the declaration of taking or notice thereof. A party challenging a declaration of taking must file preliminary objections within thirty days of the being served with the notice of condemnation. Section 306 of the former Code, 26 P.S. § 1–306. Of significance to the matter before us is that the Church does not seek to challenge the declaration of taking in order to prevent the taking from occurring. Rather, the Church seeks only the opportunity to seek more compensation than the estimated just compensation already paid into the trial court by DOT and received by the Church.

Under former Section 5526(4) of the Judicial Code, 42 Pa.C.S. § 5526(4), an action or proceeding must be commenced within five years "if the condemnor has made payment in accordance with [S]ection 407(a) or (b) (relating to possession and payment of compensation)" of the Eminent Domain Code. In this case, the former

among other components, a statement of questions involved, a summary of argument, and an argument. Pursuant to Pa. R.A.P. 2116, the statement of questions involved "must state concisely the issues to be resolved," and the rule specifically instructs the parties that "[n]o question will be considered unless it is stated in the statement of questions involved or fairly suggested thereby." Thus, where issues are raised in the statement of questions involved, but not addressed in the argument section of the brief, courts find waiver. *See Harvilla v. Delcamp*, 521 Pa. 21, 24 n. 1, 555 A.2d 763, 764 n. 1 (1989). Pursuant to Pa. R.A.P. 2118, the "summary of argument shall be a concise summary of the argument" and "should be a succinct, although accurate[,] and clear picture of the argument actually made in the brief concerning the questions." Furthermore, Pa. R.A.P.

2119(a) requires that the argument section of the brief "be divided into as many parts as there are questions to be argued," and shall include "such discussion and citation of authorities as are deemed pertinent." A party's failure to develop an issue in the argument section of its brief constitutes waiver of the issue. *See City of Philadelphia v. Berman*, 863 A.2d 156, 161 (Pa.Cmwlth.2004). Here, the Church's statement of questions presented, summary of argument, and argument portions of the brief do not correspond as directed by the rules. The Church's brief includes one question in the statement of questions involved and two issues in its summary of argument, and its argument is divided into four sections. In light of the above deficiencies, we have summarized the issues that we believe are properly before the Court for review.

Section 5526(4) of the Judicial Code applies, because DOT deposited into court estimated just compensation prior to September 1, 2006, the effective date of the current Section 5527 of the Judicial Code. Accordingly, the statute of limitations for the filing of a petition for the appointment of a board of viewers in this case began to run on July 18, 2006.

Section 405(a) of the former Code, 26 P.S. § 1–405(a), specifically provides, in pertinent part, that "[w]ithin thirty days after the filing of the declaration of taking, the condemnor shall give written notice to the *condemnee*."[9] (Emphasis added.) Section 405(b) of the former Code further provides:

> The notice shall be served within or without the Commonwealth, by any competent adult, in the same manner as a complaint or writ of summons in assumpsit, or by certified or registered mail, to the last known address of the condemnee. *If service cannot be made in the manner as provided, then service shall be made by posting a copy of the notice upon the most public part of the property and by publication of a copy of the notice omitting the plot plan required · by subsection (c)(8), one time each in one newspaper of general circulation and the legal journal, if any, published in the county.*

(Emphasis added.) Also, Section 201 of the former Code, 26 P.S. § 1–201, defines a condemnee as "the *owner of a property interest taken*, injured or destroyed, but does not include a mortgagee, judgment creditor or other lienholder." (Emphasis added.)

The Church contends that DOT was required to provide Champion with written notice of taking and just compensation pursuant to Section 405(a) of the former Code, because Champion was identified as a *potential owner* of the coal at the time of the taking. The Church, therefore, implies that it is irrelevant that DOT did not know with certainty who or what entity owned the subsurface coal. The Church seems to take the position that DOT has a duty to provide written notice to any potential condemnee, regardless of the likelihood that the individual or entity has an actual ownership interest in the condemned property. The Church, without citing any authority, also seems to suggest that, in the face of multiple potential owners having been identified, DOT could not meet its obligation to notify the owner(s)

---

**9.** When interpreting a statute, this Court is guided by the Statutory Construction Act (Act) of 1972, 1 Pa.C.S. §§ 1501–1991, which provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "The clearest indication of legislative intent is generally the plain language of a statute." *Walker v. Eleby*, 577 Pa. 104, 123, 842 A.2d 389, 400 (2004). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Allegheny Cnty. Inst. Dist. v. Dep't of Public Welfare*, 668 A.2d 252, 257 (Pa.Cmwlth.1995) (citing to Section 1921(b) of the Act, 1 Pa.C.S. § 1921(b)). Only "[w]hen the words of the statute are not explicit" may this Court resort to statutory construction. 1 Pa.C.S. § 1921(c). "A statute is ambiguous or unclear if its language is subject to two or more reasonable interpretations." *Bethenergy Mines Inc. v. Dep't of Envtl. Prot.*, 676 A.2d 711, 715 (Pa.Cmwlth.), appeal denied, 546 Pa. 668, 685 A.2d 547 (1996). Moreover, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). It is presumed "[t]hat the General Assembly intends the entire statute to be effective and certain." 1 Pa.C.S. § 1922(2). Thus, no provision of a statute shall be "reduced to mere surplusage." *Walker*, 577 Pa. at 123, 842 A.2d at 400. Finally, it is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1).

of the subsurface coal (*i.e.*, the condemnee) by publishing the newspaper notice under former Section 405(b) of the Code.

The Church also contends that the statute of limitations period was tolled, because DOT's published notice was legally insufficient under Section 405(c)(8) of the former Code. Specifically, the Church argues that the notice was defective to the extent that it failed to identify sufficiently the condemned property (*i.e.*, the coal estate) and its location (*i.e.*, the address). Section 405(c)(8) of the former Code, 26 P.S. § 1–405(c)(8), provides in pertinent part:

> The notice to be given the condemnee shall state: ... [a] statement that the condemnee's property has been condemned and a *reasonable identification thereof in the case of a total taking* and, in the case of a partial taking, a plot plan showing the condemnee's entire property and the area taken.

(Emphasis added.)

 With regard to the alleged deficiencies identified by the Church, we note that the notice provisions of the former Code are strictly construed insofar as the irregularities in the procedural aspects of the condemnation are *prejudicial. In re Condemnation by the Commonwealth of Pa., Dep't of Transp., of the Right–of–Way for State Route 0079, Section 290, A Ltd. Access Highway in Twp. of Cranberry (Cranberry)*, 805 A.2d 59, 67 (Pa.Cmwlth. 2002), *appeal denied*, 572 Pa. 759, 818 A.2d 506 (2003). A determination of prejudice to the party asserting procedural irregularities is dependent on the facts and circumstances of each case. *See generally In re Condemnation of Lands of Patterson*, 722 A.2d 1176, 1178 (Pa.Cmwlth.1999).

In *Avery v. Commonwealth*, 2 Pa. Cmwlth. 105, 276 A.2d 843 (1971), the appellant challenged the Department of Forests and Waters' taking of land because the Department's notice failed to state that some of the land to be condemned was located in townships other than the township identified in the notice, and an oral, as opposed to written, approval to the project was given by the Department Secretary. *Avery*, 276 A.2d at 845. We held that "the Department substantially complied with all notice and authorization procedures and that appellants were *not prejudiced by any irregularities*." *Id.* (emphasis added). Specifically, we noted that "[a]ppellants attended the hearings and were fully aware of the Department's intentions with respect to their properties. They were never misled as to the authority or finality of the steps being taken by the Department." *Id.* Accordingly, we refused to apply the doctrine of strict construction. *Id.*

Similarly, in *Patterson*, the condemnor used in its declaration of taking the language of Pa. R.C.P. No. 1018.1, pertaining to a notice to defend, rather than the language required by Section 405(c)(12) of the Code. *Id.* at 1177. We concluded that notwithstanding the notice's failure to inform the condemnee that she had to file preliminary objections, condemnee was not prejudiced because she, in fact, had filed preliminary objections and participated in the proceedings. *Id.* at 1178; *see also Cranberry*, 805 A.2d at 67 (noting that although declaration of taking was not served on unit owners, they were not prejudiced because each unit owner filed preliminary objections to taking, petitioned trial court to appoint board of viewers and had opportunity to participate fully in condemnation process).

 As demonstrated by the cases discussed above, an owner of condemned property must establish prejudice as a result of defective notice in order to prevail against a statute of limitations defense asserted by the condemnor. The mere exis-

tence of a procedural defect is insufficient, in and of itself, to extend the time for objecting to a declaration of taking or petitioning for an appointment of a board of viewers. In other words, in a situation where notice to the owner was defective, the owner must establish that the defective notice prejudiced the owner by preventing the owner from timely asserting its rights.

The Church's analysis ignores the concept of prejudice in its entirety. The Church appears to argue that when a notice of taking or estimated just compensation is defective, an owner of condemned property has unlimited time to respond to the condemnation in whatever manner the owner chooses. As a result, the Church does not allege that it, as the assignee, suffered any prejudice that would have prevented it from timely filing a petition for the appointment of a board of viewers. Had the Church shown that as a result of lack of direct notice to Champion or the alleged defect in the published notice, neither the Church nor Champion was aware of the filing of the just compensation until after the five-year statute of limitations expired (*i.e.*, the kind of prejudice established in *In re Rights of Way and Easements Situate in the Township of Mt. Pleasant*, 47 A.3d 166 (Pa.Cmwlth.2012), *appeal denied*, —— Pa. ——, 63 A.3d 1250 (2013)), perhaps they could have prevailed if they established that they acted with reasonable diligence by filing when they did. Such an argument, however, was not made below, is not made in the Church's brief to this Court, and is not supported by the record.

To the contrary, the record reveals that the Church knew in 2006–2007 that DOT had condemned the subsurface coal rights,

because the Church, in conjunction with the condemnation of its own property, sent interrogatories to DOT, requesting DOT to identify the owner of the condemned coal estate beneath the Church's property. In response, DOT provided the coal analysis which identified Champion, along with others, as a potential owner of the coal estate. The assignment, executed by Champion and the Church on December 28, 2010, expressly assigns the Church "all of Champion's right, title, and interest (if any) in and to a claim … for damages, which include[s] … estimated [or] just compensation … for certain coal taken by [DOT] pursuant to the Declaration of Taking filed in April 2006 by [DOT] … at [docket number] GD 06–10196." The record, therefore, appears to demonstrate a lack of prejudice, because it establishes that as of December 28, 2010, (almost seven months prior to the expiration of the statute of limitations for the appointment of a board of viewers for just compensation) both the Church and Champion knew of the condemnation of the coal estate.[10] There is no explanation in the record as to why, once it acquired an interest through the assignment, the Church sat on its claim for almost ten months.

For the reasons set forth above, even if we were to assume that the notice was defective, the Church cannot prevail, because it did not establish that the defective notice prevented it from pursuing the appointment of a board of viewers within the five-year period starting July 18, 2006 (the date of deposit of just compensation).

Accordingly, we affirm the trial court's order.

Senior Judge COLINS dissents.

---

**10.** We note that these are only the facts that we have gleaned from the record. There is no evidence of record as to when Champion first learned of the taking of its coal estate.

Champion may have known of the taking far in advance of its execution of the assignment in favor of the Church.

## *ORDER*

AND NOW, this 16th day of August, 2013, the order of the Court of Common Pleas of Allegheny County is hereby AFFIRMED.