# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen T. Carpenito, Christine     :
Maccarone, Tom Franko, Gayle     :
Rehnert, Greg and Dawn Fisher,     :
           Appellants     :
    :    No. 286 C.D. 2025
           v.     :
    :    Argued: April 13, 2026
North Manheim Township Zoning     :
Hearing Board and Brett Nolt     :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STELLA M. TSAI, Judge


***OPINION NOT REPORTED***

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                      **FILED: May 6, 2026**


Stephen T. Carpenito, Christine Maccarone, Tom Franko, Gayle Rehnert, and Greg and Dawn Fisher (collectively Residents) appeal the order entered by the Court of Common Pleas of Schuylkill County (Common Pleas) on February 11, 2025. Through that order, Common Pleas affirmed the decision (Decision) entered by the North Manheim Township Zoning Hearing Board (Board) on May 22, 2024, which granted Brett Nolt's (Nolt) application for two use variances (Variance Application). Upon review, we reverse.

# I. BACKGROUND[1]

Nolt owns a property, which is partially zoned C-2 (general commercial) and partially zoned R-2 (medium density residential), is largely forested, and is replete with sections that are steeply sloped (Property). Though the Property itself is currently undeveloped, the surrounding area contains a residential development, as well as multiple long-term care facilities. The Property is entirely within North Manheim Township (Township), but is just beyond the city limits of Pottsville.

On February 23, 2024, Nolt filed his Application with the Board. Therein, he expressed his intent to subdivide the Property into a 5.08-acre parcel, which would be deforested and used as the situs for a solar farm, and a 6.28-acre parcel, which would be left undisturbed; almost the entirety of the solar farm would be on the C-2-zoned portions of the 5.08-acre parcel, with the remaining 5% of the project (approximately 125 solar panels) on parts zoned R-2. *See* Attach. to Appl. at 1; Sketch Plan for Red Horse Solar, LLC 1,443.5 KW Ground Mount Solar PV System (Sketch Plan) at 1.[2] As proposed, the solar farm would include 2,493 solar

---

[1] We largely draw this section's substance from the Board's Decision. *See generally* Decision, 5/22/2024.

[2] Both the Application and the Decision inaccurately state that the Property is 12.28 acres in size. *See* Attachment to Appl. at 1; Decision, Findings of Fact (F.F.), ¶4. As reflected by the deed between Nolt and Seiders Hill, Inc. (the previous owner), the Property only covers 11.362 acres. *See* Corp. Deed, 12/27/2023, at 1. These errors ultimately have no bearing on the outcome of this matter, though, as Nolt's proposed subdivision accurately reflected the Property's true size and the Board recognized that the Property's subdivision would create two parcels (though the Board's math was still not completely accurate). *See* Sketch Plan at 1 (depicting the subdivided Property as containing a 5.08-acre lot and a 6.28-acre lot); Decision, F.F., ¶¶10, 12 (noting that Nolt "proposed to subdivide the [Property] into one 5-acre parcel and one 6.28[-]acre parcel[,]" while also stating that "[t]he proposed solar array would take up approximately 5.08 acres of land").

panels dispersed evenly across the 5.08-acre parcel along with 10 power inverters,[3] would be connected via subterranean transmission lines to the broader electrical grid, and would generate approximately 1.7 million kilowatt-hours of electricity per year. Nolt requested two use variances through his Application to account for both the C-2 and R-2-based portions of the project, due to the fact that solar farms are not allowed by right, conditional use, or special exception in either of these zoning districts.

The Board then held public hearings regarding the Application on April 24, 2024, and May 22, 2024.[4]  At the close of the May 22, 2024 hearing, the Board voted unanimously to grant Nolt's Application, whereupon Residents appealed the Decision to Common Pleas.[5]  Common Pleas took no additional evidence and subsequently affirmed the Board's Decision, prompting Residents to file the instant appeal with our Court.

---

[3] Inverters convert direct current into alternating current, which is more easily and efficiently transmitted over long distances.

[4] The Board intended to hold a hearing regarding this matter on April 4, 2024, but that hearing was continued to April 24, 2024, due to the lack of a quorum.

[5] Residents all appeared at the Board's hearings and were accorded party objector status, but elected (with Nolt's consent) to have Stephen T. Carpenito represent their collective interests, due to his status as both an attorney and party objector.

## II. DISCUSSION[6]

Residents offer three arguments for our consideration, through which they assert that Common Pleas improperly affirmed the Board's Decision. We summarize these arguments as follows. First, the Board erroneously determined that Nolt was entitled to his desired use variance regarding the portion of the Property zoned R-2, because the record reflects that this variance was necessitated by Nolt's desire to maximize the solar farm project's profitability, rather than by conditions inherent to the Property itself. Second, the Board's determination that the Property is beset by unnecessary hardship that prevents its development in a Zoning Ordinance[7]-compliant manner is not supported by substantial evidence. Finally, the Board incorrectly determined that the Township's Zoning Ordinance unlawfully excludes solar farms, because solar farms are substantially similar to wind farms (as defined in the Zoning Ordinance) and, thus, should have been deemed a permitted use in the zoning districts where wind farms are allowed by right. Residents' Br. at 19-29.[8]

---

[6] "In a land use appeal, where the trial court does not take additional evidence, this Court's . . . review is limited to determining whether the [zoning hearing board] committed an error of law or an abuse of discretion. . . . The [zoning hearing board] abuses its discretion when its findings of fact are not supported by substantial evidence." *Residents Against Matrix v. Lower Makefield Twp.*, 845 A.2d 908, 910 (Pa. Cmwlth. 2004) (cleaned up). "Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Eureka Stone Quarry, Inc. v. Dep't of Env't Prot.*, 957 A.2d 337, 344 (Pa. Cmwlth. 2008) (cleaned up). Where, as here, the zoning hearing board acts as factfinder, it has exclusive authority to make determinations regarding evidentiary weight and witness credibility. *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hr'g Bd.*, 83 A.3d 488, 518 (Pa. Cmwlth. 2014).

[7] North Manheim Township Zoning Ordinance, Schuylkill County, Pa., *as amended* (1968).

[8] Residents also assert in their brief's "Summary of Argument" section that the Board abused its discretion by determining that the proposed solar farm would not alter the essential character of the surrounding area. *See* Residents' Br. at 17-18. We deem this argument waived, however, because Residents did not further develop (or even mention) it in the "Argument" section of their brief. *See In re Condemnation ex rel. Com., Dep't of Transp.*, 76 A.3d 101, 106 (Pa. Cmwlth.

**(Footnote continued on next page…)**

The Township's Zoning Ordinance mandates, in relevant part, that the Board may not grant an applicant's request for a given variance unless it finds that the applicant has proven the following:

1. That there are special circumstances or physical conditions, fully described in the findings of the Board, applying to such land, structure, or buildings and which are not applicable generally to other lands, structures, or buildings in the same distance [sic].

2. That said special circumstances or conditions have not resulted from any act of the applicant subsequent to the adoption of this [Zoning] Ordinance, whether in violation of the provisions hereof or not, and that such circumstances or conditions are such that the strict application of the provisions of this [Zoning] Ordinance would deprive the applicant of the reasonable use of such land, structure, or building.

3. That for reasons fully set forth in the findings of the Board, the granting of the variance is necessary for the reasonable use of the land or buildings and that the variance as granted by the Board is the minimum variance that will accomplish this purpose.

4. That the granting of the variance under such conditions as the Board may deem necessary or desirable, will be in harmony with the general purpose and intent of this [Zoning O]rdinance, and will not be injurious to the neighborhood or otherwise detrimental to the public welfare.

5. That any variance granted shall be subject to such conditions as will assure that the adjustment thereby authorized shall not construe a grant of special privilege inconsistent with the limitations upon other properties in the vicinity and district in which the subject property is situated.

2013) ("A party's failure to develop an issue in the argument section of its brief constitutes waiver of the issue.").

Zoning Ordinance § 702.4.a.[9]  The Zoning Ordinance further mandates that "[i]n no case shall a variance be granted solely for reasons of additional financial gain on the part of the applicant."  *Id.* § 702.4.c.

We view this language through the lens of our well-established case law.  Generally speaking, "[a] variance . . . is issued by a zoning hearing board [and] is not provided for in the zoning ordinance[; instead, a variance affords] permission to deviate from the ordinance in either the dimensions of the improvements made to the land or in the use of the land."  *Nowicki v. Zoning Hr'g Bd. of Borough of Monaca*, 91 A.3d 287, 291 (Pa. Cmwlth. 2014).  "A dimensional variance involves a request to adjust zoning regulations to use the property in a manner consistent with regulations, whereas a use variance involves a request to use property in a manner that is wholly outside zoning regulations."  *Tri-Cnty. Landfill, Inc.*, 83 A.3d at 520.  "It is only the stringency of the standard in proving an unnecessary hardship that varies, depending on whether a use or dimensional variance is sought."  *Soc'y Hill*

---

[9] This variance standard is substantially similar to the one articulated in Section 910.2(a) of the Pennsylvania Municipalities Planning Code (MPC).  *See* Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a).  Section 910.2(a) of the MPC provides

> that a zoning board may grant a variance where it finds the applicant has established all of the following conditions: (1) there are unique physical circumstances or conditions peculiar to the property that impose an unnecessary hardship; (2) because of such unique physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the zoning ordinance and that the variance is therefore necessary to enable the reasonable use of the property; (3) such unnecessary hardship has not been created by applicant; (4) the variance will not alter the essential character of the neighborhood; and (5) the variance represents the minimum variance that will afford relief.

*Pequea Twp. v. Zoning Hr'g Bd. of Pequea Twp.*, 180 A.3d 500, 506 (Pa. Cmwlth. 2018) (citing 53 P.S. § 10910.2(a)).

*Civic Ass'n v. Phila. Zoning Bd. of Adjustment*, 42 A.3d 1178, 1186 (Pa. Cmwlth. 2012). In keeping with this, an applicant has a heightened burden of proof when seeking a use variance as opposed to a dimensional variance. *See Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998) ("[T]he grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation."); *Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011) (noting that "a lesser quantum of proof is required to establish unnecessary hardship for a dimensional variance"); *cf. Pfile v. Zoning Bd. of Adjustment of Speers Borough, Wash. Cnty.*, 298 A.2d 598, 603 (Pa. Cmwlth. 1972) (stating that "[v]ariances, especially those authorizing a commercial use in a residential district, should not be granted with a lavish hand"). Regardless of the type of variance sought, however, "[t]he burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling." *Singer*, 29 A.3d at 149.

With regard to use variances in particular, "unnecessary hardship is established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or (3) that the property has no value for any purpose permitted by the zoning ordinance." *Hertzberg*, 721 A.2d at 47. Individually, each of these considerations as to undue hardship is "[neither] the only factor nor the conclusive factor in resolving a variance request." *Id.* at 48; *accord Marshall v. City of Phila.*, 97 A.3d 323, 330 (Pa. 2014) ("[I]n establishing hardship, an applicant for a variance is not required to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted

7

purpose."); *Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513, 535 (Pa. Cmwlth. 2018) (cleaned up) ("[T]he [Pennsylvania] Supreme Court [has] explicitly rejected the requirement that an applicant for a variance . . . eliminate every possible permitted use."). "Rather, multiple factors are to be taken into account when assessing whether unnecessary hardship has been established." *Marshall*, 97 A.3d at 330 (cleaned up).

Importantly, however, "mere economic hardship will not[, in and] of itself[,] justify a grant of a variance." *Id.* (cleaned up). Nor are "personal . . . considerations . . . sufficient grounds upon which to base the grant of a variance." *Borough of Latrobe v. Sweeney*, 331 A.2d 925, 927 (Pa. Cmwlth. 1975). "A variance, whether labeled dimensional or use, is appropriate 'only where the *property*, not the person, is subject to hardship.'" *Yeager v. Zoning Hr'g Bd. of City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) (quoting *Szmigiel v. Kranker*, 298 A.2d 629, 631 (Pa. Cmwlth. 1972)) (emphasis in original). The onus is thus on the applicant to firmly establish that "a substantial burden . . . attend[s] *all* . . . compliant uses of the property, not just the particular use [that the applicant has chosen]." *Id.* at 598 (emphasis in original). Accordingly, our appellate courts have "consistently reject[ed] requests for . . . variances where proof of hardship is lacking. Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to [develop a property as they see fit], the unnecessary hardship criterion required to obtain a variance is not satisfied[.]" *Soc'y Hill Civic Ass'n*, 42 A.3d at 1187.

Returning to the matter at hand, we agree with Residents' first argument, because the record unmistakably shows that Nolt's request for a use variance regarding the R-2-zoned portion of the Property was motivated by his

personal development preferences, rather than conditions inherent to the land. Indeed, Nolt admitted as much during the course of the Board's May 22, 2024 hearing, where the following exchange occurred:

> CARPENITO: Now, the choice to do 5 acres as opposed to a smaller development within – completely in the [C-2 District] is a choice you've made for economic reasons, correct?
>
> NOLT: Yes. There's a lot of fixed costs in the development process, this being one of them. Interconnection costs getting power from [State Route] 901 to this site is a fixed cost. Wire size doesn't change with high voltage, whether it's 2 megawatts or half a megawatt. So there's fixed costs that we need [to] divide out among a large array.
>
> CARPENITO: So your decision to go into the residential area is due to profitability of doing the project as there is nothing specific about the land or specific nature of the land. It's an economic reason why you're going into the [R-2] District, right?
>
> NOLT: We used the available area that had suitable grade.
>
> CARPENITO: Right. So – but you're trying to maximize profit. There could be a smaller solar farm; you just wouldn't make as much money, correct?
>
> NOLT: Yeah.

Bd. Hr'g Tr., 5/22/2024, at 92-93 (cleaned up). Similarly, Michael Brinkash, a civil engineer who had created the project's land development plans, admitted during the Board's May 22, 2024 hearing that the solar farm could be built entirely within the C-2-zoned portions of the Property, as well as that the farm's extension into the R-2 District was necessitated by Nolt's personal desires, not by the land itself:

> CARPENITO: Okay. Now, the piece of property in question is approximately 12 acres. I know it might be a little less or more, but it is approximately 12 acres, correct?
>
> BRINKASH: Correct.

9

. . . .

> CARPENITO: Okay. And you're asking for a variance because one of the lines of solar panels will be intruding upon the [R-2] District, correct?
>
> BRINKASH: I would defer to [Nolt's attorney], but I believe the variance is because it's not – it's not a stated use in any zoning district. That's the basis of the variance request.
>
> CARPENITO: Right. But the choice to subdivide this particular piece of property to put solar arrays in . . . the R-2 District, that's a choice by [Nolt], correct? He could create a smaller solar array and fit completely within the [C-2] District, could he not?
>
> BRINKASH: Theoretically, yes, it could be smaller. But in order to meet the size that he meets [sic], we have a few panels proposed in the R-2 . . . District.
>
> CARPENITO: Okay. So that's the size that he needs. It's not some engineering requirement that you're aware of that this many lines of solar panels have to be installed. There could be less panels installed so that all panels are within the C-2 District?
>
> BRINKASH: Yes. From my perspective, that would not matter. I would defer to [Nolt].

*Id.* at 7-9 (cleaned up). Given this, Nolt clearly failed to prove that he was entitled to his requested R-2 District use variance, because the record incontrovertibly establishes that the requisite unnecessary hardship does not exist as to the R-2 portion of the Property. The Board consequently abused its discretion by concluding otherwise.

We are similarly persuaded by Residents' second argument, because the Board's determination that the C-2-zoned portions of the Property are beset by undue hardship, and thus cannot be developed in conformity with the Zoning Ordinance, is not supported by substantial evidence. The Board made the following, relevant findings of fact:

10

23. The solar array panels must be located on slopes less than 25%.

24. The [Property] contains slopes in excess of 30%.

25. The proposed solar array project would be located in areas of the [Property] that are sloped between 15% and 20%.

. . . .

27. Mr. Brinkash was qualified as an expert in civil engineering and land development. He was the only such expert that testified.

28. Mr. Brinkash opined that due to the slopes on the [Property], it would be very challenging to develop it consistent with a traditional commercial use.

29. There was no competing expert opinion to cast doubt on Mr. Brinkash's conclusion that developing the [Property] with a traditional commercial use would be challenging.

30. Although Luther Ridge Nursing Home is located on an adjacent parcel, there was no indication what the slopes on that parcel were at the time it was developed. As such, the Board did not believe that the existence of [the Luther Ridge] property indicated that the [Property] could be used for traditional commercial purposes.

31. In light of the above, there was no indication that the [Property] could be developed into a traditional commercial use without the requested variance.

Decision, F.F., ¶¶23-25, 27-31. The Board then made the following conclusions based upon those findings:

3. The Board concludes that the slopes on the . . . Property constitute a unique physical circumstance that creates an unnecessary hardship to [Nolt.]

. . . .

5. [T]he Board notes that . . . in establishing a hardship an applicant need not show that the property cannot be used for any of the permitted purposes under the zoning ordinance. . . . The unrebutted expert testimony from Mr. Brinkash established that without the requested variance it

11

> would be extremely difficult to develop the [Property] in compliance with the Zoning Ordinance. As such, the Board concludes that the [Property] cannot be developed in strict conformity with the Zoning Ordinance.

*Id.*, Conclusions of Law, ¶¶3, 5 (cleaned up). The Board thus based its unnecessary hardship determination upon Brinkash's testimony regarding how the Property's slopes would affect Nolt's ability to develop the Property in a Zoning Ordinance-compliant manner.

In doing so, however, the Board misinterpreted Brinkash's testimony, as well as the overarching unnecessary hardship standard. It is true that Brinkash stated at various points that it would be "extremely challenging," "difficult," "much more difficult," "very challenging," "very difficult," or would take "significant effort" to develop the Property for a by-right commercial use. *See* Bd. Hr'g Tr., 4/24/2024, at 82, 88, 93, 101; Bd. Hr'g Tr., 5/22/2024, at 9. However, he also admitted that the Property could theoretically be developed for such use, and even acknowledged that a 1,500-square-foot commercial building with numerous accessory parking spaces, such as a bank or restaurant, could potentially be built thereon, albeit with either a large detention basin or another type of stormwater management system. *See* Bd. Hr'g Tr., 4/24/2024, at 100; Bd. Hr'g Tr., 5/22/2024, at 7, 17, 19-26. Brinkash thus did not testify that the aforementioned slopes prevented the Property from being developed in a Zoning Ordinance-compliant manner, but rather that such development could be done with a good deal of work.

Furthermore, while Nolt could have justified the need for his desired use variances by establishing that such development would be prohibitively costly, or that the Property has no value in terms of by-right development, he failed to present any evidence to that effect; instead, Nolt admitted that he had never considered whether it would be feasible to develop the Property for *any use other*

12

*than the proposed solar farm*, as well as that he had purchased the Property with that sole and specific use in mind. Bd. Hr'g Tr., 5/22/2024, at 93-97. Given all of this, the record evidence does not support the Board's conclusion that the Property's slopes constitute an unnecessary hardship that prevent Zoning Ordinance-compliant development of the Property's C-2-zoned sections. Consequently, the Board abused its discretion by granting Nolt's requested C-2 District use variance.

### III. CONCLUSION

In accordance with the foregoing analysis, we reverse Common Pleas' February 11, 2025 order.[10]

<br>

LORI A. DUMAS, Judge

---

[10] We decline to address Residents' remaining argument, due to our disposition of this appeal in their favor. Furthermore, we note that the Board did not address Nolt's alternative argument that the R-2 District use variance should be granted as *de minimis* in nature. *See* Bd. Hr'g Tr., 5/22/2024, at 116 (Nolt's attorney stated that "[a]s it pertains to the amount of panels in the R-2 District, while this is a use variance, I would argue that the amount of variance being requested in the R-2 District is *de minimis*"); *see generally* Decision (Nolt's *de minimis* argument is not addressed therein). This omission is ultimately harmless, however, due to our disposition of this appeal, as the solar farm project cannot move forward without the C-2 use variance, which we invalidated through this opinion.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen T. Carpenito, Christine    :
Maccarone, Tom Franko, Gayle    :
Rehnert, Greg and Dawn Fisher,    :
            Appellants    :
    :  No.  286 C.D. 2025
            v.    :
    :
North Manheim Township Zoning    :
Hearing Board and Brett Nolt    :

# O R D E R

AND NOW, this 6th day of May, 2026, it is hereby ORDERED that the Court of Common Pleas of Schuylkill County's (Common Pleas) February 11, 2025 order, through which Common Pleas affirmed the North Manheim Township Zoning Hearing Board's May 22, 2024 decision that granted Brett Nolt's use variance application, is REVERSED.

 

**LORI A. DUMAS, Judge**